BRADLEY LUMBER AND MANUFACTURING COMPANY *vs.* GEORGE C. CUTLER & another.

Suffolk. March 5, 1925. — May 28, 1925.

Present: RUGG, C.J., CROSBY, CARROLL, & WAIT, JJ.

*Contract,* Performance and breach, Construction, Cancellation. *Waiver. Evidence,* Relevancy and materiality, Interrogatories. *Practice, Civil,* Interrogatories. *Damages,* For breach of contract.

A lumber company, by a contract in writing, agreed to sell and deliver to a firm of dealers not less than three million feet nor more than four million feet of lumber in quantities and at times as ordered by the dealers, shipments to be in "approximately equal monthly quantities during the contract period," the contract containing the clause, "This contract subject to delay from . . . other causes beyond our control." There were delays in deliveries, and the dealers cancelled the contract for the stated reason that the manufacturer had failed to perform and make deliveries. In an action by the manufacturer against the dealers on the contract, the plaintiff relied, to excuse delays, on evidence of a car shortage and a railroad embargo of shipments and on the clause of the contract above quoted. The defendants contended that by relying on this clause the plaintiff was suing on a defence and not on a performance. *Held,* that

(1) Whether the breach was serious enough to justify the defendant in cancelling the contract was a question of fact for the jury;

(2) If the jury found that the car shortage was beyond the plaintiff's control, that it was not occasioned by any act or omission by the plaintiff, and that it was not so permanent and extensive that the foundations of the contract were taken away and its performance rendered impossible for such a length of time that the defendants could repudiate it, recovery by the plaintiff was not barred.

It appeared, in the action above described, that the defendants agreed to purchase the lumber from the plaintiff to fulfill the requirements of a contract they had with a customer. There was no reference thereto in the contract with the plaintiff. The plaintiff's president, in answers to interrogatories, admitted that he knew of such contract. The judge

charged the jury to the effect that time was of the essence if the plaintiff entered into the contract with knowledge of the contract of the defendants with their customer for the deliveries of lumber, "in the same amounts of the same sizes . . . at the same times," and if it was made for the purpose of supplying the material to enable "the defendants to meet their obligations . . . with the . . . [customer]." *Held,* that the instructions were sufficiently favorable to the defendants.

Instructions by the judge to the jury in the action above described, relating to issues, whether certain conduct of the defendants could be found to constitute waivers by them of prompt deliveries required under the contract, and the effect of such waivers if found, were *held* to be correct.

There was evidence at the trial above described tending to show that, at the time of the car shortage and embargo, the plaintiff used available cars ratably in fulfilling contracts with the defendants and others of its customers. This evidence was controverted by evidence of the defendants. *Held,* that

(1) Whether the defendants were treated by the plaintiff ratably with its other customers was a question of fact;

(2) The plaintiff, because of the difficulty in making shipments, was not obliged at its peril to make equal monthly shipments on account of the contract: it was protected by the clause of the contract excusing it for delay arising from causes beyond its control.

The contract of the defendants, in the action above described, with their customer provided for a modification of prices in the event of a general price revision. The contract between the plaintiff and the defendants had no such provision. The defendants were required to submit to a reduction of prices with their customer and asked for the same modification from the plaintiff. The plaintiff refused. Thereafter the defendants cancelled the plaintiff's contract and the plaintiff contended that its refusal to submit to a price reduction and not the alleged delay in shipments was the real reason for the defendants' cancellation. The judge in effect charged the jury that no inference was to be drawn against the plaintiff for standing upon its contract and its legal rights under it; that, if the real reason for the defendants' cancellation was the plaintiff's refusal to submit to a modification of price, the cancellation would not be justified; and continued: "Assuming that was a reason for cancellation, but at the same time there was a good ground for cancellation because of unreasonable delays in delivery, the defendants would have a right to insist upon the unreasonable delays provided in your consideration of the case you find the delays are a breach of the contract." *Held,* that the instruction was adequate and that a certain request by the defendants for instructions was covered thereby.

The plaintiff was not precluded in the action above described from appropriating to the performance of his contract with the defendants lumber which, at the time the contract was made, he already had manufactured.

At the trial of the action above described, the defendants propounded interrogatories to the president of the plaintiff under G. L. c. 231, § 61. The defendants introduced in evidence certain of the interrogatories and answers thereto which related to contracts for lumber which the plaintiff manufactured for customers other than the defendants, and to shipments which had been made thereunder to such other customers.

Subject to exceptions by the defendants, the plaintiff thereupon was permitted to introduce in evidence others of those interrogatories and answers thereto which related to amounts of lumber that the plaintiff had manufactured for the defendants' contract and the amounts which he had on hand thereunder at the time the contract was cancelled. *Held*, that the admission was proper under § 89 of the statute.

While, in the action above described, the plaintiff was under a duty to mitigate the damages by sales of lumber he had on hand at the time of the cancellation, if possible, and would be liable to have his damages reduced for failure to make such sales, the jury on that question were not required to consider the price paid by the defendants' customer to the defendants for lumber the customer purchased from them.

CONTRACT upon a contract in writing for the manufacture and sale of lumber described in the opinion. Writ dated March 15, 1925.

In the Superior Court, the action was tried before *Sanderson*, J. The defendants introduced in evidence interrogatories numbered 1, 2, 3, 4, 5, 10, 12, 16, 17 and 18, propounded by them to the plaintiff's president and answers thereto, from which it appeared that the plaintiff, when the contract with the defendants was made, knew that the defendants had a contract with the General Electric Company for furnishing the General Electric Company with lumber of the kind mentioned in the plaintiff's contract and which provided for deliveries to the General Electric Company in substantially the same manner as the contract with the plaintiff provided for deliveries by the plaintiff to the defendants; that the defendants made the contract with the plaintiff set forth in the plaintiff's declaration for the purpose of enabling the defendants to carry out the contract with the General Electric Company referred to in the preceding interrogatory; and that the defendants made the contract with the plaintiff mentioned in the plaintiff's declaration for the purpose of enabling the defendants to make certain shipments of lumber to the General Electric Company under the same contract which the defendants had with the General Electric Company; and lumber manufactured by the plaintiff under contracts with other customers than the defendants, and shipments made thereunder were shown. The plaintiff then offered and the judge admitted, subject to the defendants' exceptions, interrogatories 6, 7, 8, 9 and 25 and answers

thereto showing manufactures of lumber by the plaintiff for the defendants' contract in August, September and October, 1920, and that, at the time of the cancellation of the contract by the defendants, the plaintiff had on hand approximately one million seven hundred forty-five thousand five hundred and eighty feet of lumber.

Other material evidence is described in the opinion. At the close of the evidence, the defendants moved that a verdict in their favor be ordered. The motion was denied. The defendants then asked for the following rulings:

"1. By the terms of the contract relied upon, there is no obligation imposed upon the defendants to purchase any lumber, and on all the evidence and the pleadings the plaintiff is not entitled to recover."

"7. If the plaintiff shipped only four cars in August, and six cars in September, then in the absence of proving an excuse for larger shipments beyond the plaintiff's control, the plaintiff did fail in a substantial manner to perform its contract, and cannot maintain this action.

"8. The plaintiff, having known at the time of the signing of the contract the purpose of the contract to enable Stetson, Cutler and Company to carry out the contract with the General Electric Company in evidence, and knowing that that contract required the delivery by Stetson, Cutler and Company to the General Electric Company in equal monthly quantities during the contract period, and the plaintiff having made a corresponding agreement in its contract with the defendants, should have made every reasonable effort, and should have done everything that other shippers in the vicinity of the plaintiff reasonably could do to get cars and route shipments so as to avoid embargoes and thus make the deliveries they had agreed to make.

"9. In determining whether the plaintiff has proved that there was an excuse for failure to deliver beyond the control of the plaintiff, the jury has a right to consider what other shippers were able to do at the same time that the plaintiff should have shipped, and among other things has a right to consider the evidence of Tuggle & Kiser as to the shipments they were able to make during the period of August, Sep-

tember and October, 1920, to Schenectady, Pittsfield, and other points in that vicinity.

"10. Whether the contract between the plaintiff and the defendants was for four million or three million feet is to be determined by the amount of orders given to the plaintiff by the defendant.

"11. Whether the contract between the plaintiff and the defendants was for four million or three million feet is to be determined among other things by the amount of orders given by the defendants to the plaintiff.

"12. If the General Electric Company cancelled certain portions of the contract between it and the defendants on account of late deliveries, or failure to deliver, then the total amount of the contract is to be reduced by the number of feet so cancelled.

"13. If the General Electric Company cancelled certain portions of the contract between it and the defendants on account of late deliveries, then the defendants became entitled to cancel corresponding portions of their contract with the plaintiff.

"14. In computing the number of feet covered by the contract between the plaintiff and the defendants, the jury have a right to consider, and should consider, the total number of feet of lumber which the defendants supplied to the General Electric Company under their contract with that company, at least if the jury finds that the total number of feet of lumber which Stetson, Cutler and Company were enabled to supply the General Electric Company was reduced below the figure named in both contracts on account of slow delivery by the plaintiff.

"15. If the plaintiff is entitled to recover at all, the plaintiff cannot recover on the basis of the difference between the market price and the contract price, except for the lumber which it made on the defendants' order and had on hand at the time the contract was cancelled.

"16. In determining this amount of lumber, the jury are not to take into consideration the lumber cut prior to the signing of the contract.

"17. In determining the amount of lumber as to which the

plaintiff is entitled to recover, the difference between the market price and the contract price, if the plaintiff is entitled to recover at all, the jury should consider only the lumber which the plaintiff had on hand at the time the contract was cancelled, of the sizes included in the contract, or adaptable to the sizes included in the contract.

"18. In determining whether or not the plaintiff had on hand lumber adaptable to the contract, the jury should also consider that in the ordinary course of business the plaintiff, if it ran its mill at all, would have to make a certain percentage of lumber of the kind referred to in the contract.

"19. If the plaintiff is entitled to recover at all, the resale prices which it says it obtained for lumber on hand at the time the contract was cancelled are not conclusive of the market price of the lumber, but the jury are to consider all of the evidence as bearing upon the market price, including, for example, the price which the General Electric paid Stetson, Cutler and Company for lumber of the kind referred to in the contract, from the time of the cancellation of the contract to the end of the contract period, and the plaintiff is only entitled to recover, if it is entitled to recover at all, as to such part on hand at the time of the cancellation of the contract, the difference between the contract price and the fair market value of the lumber at the time and place of delivery.

"20. Even if the defendants in cancelling the contract were influenced by the plaintiff's refusal to change the price to correspond with the drop in market price, still if the plaintiff had failed to perform its contract in a substantial manner, the defendants were entitled to cancel the contract, and if the defendants were so entitled to cancel the contract, their motive is immaterial.

"21. The jury on all the evidence cannot find that all of the box lumber cut by the plaintiff up to the cancellation of the contract, to wit: one million nine hundred and sixty-three thousand nine hundred and eighty-two feet, according to the plaintiff's computation, is applicable to the contract. :

"22. If there is a finding for the plaintiff, the jury cannot assess damages on the basis of the difference between the

contract price and the resale price as to the entire amount the plaintiff claims it cut for the defendants, viz: one million nine hundred and sixty-three thousand nine hundred and eighty-two feet.

"23. The plaintiff is not entitled to interest on any damages it may recover from the date of the writ.

"24. As a matter of law, the plaintiff cannot recover on the basis of a contract for four million feet."

The rulings above described were refused.  That portion of the charge of the judge to the jury which related to waivers was as follows:

"Now I am leaving to you to decide as a question of fact whether there was anything in the correspondence of the parties, or in their conversation, or in their conduct that is found by you to be a waiver of their right to cancel the contract because of the delay in making any of the deliveries. After the end of August what was the purpose of the parties in making and accepting deliveries in September; you may ask the question in regard to deliveries in September and the same of deliveries in October up to the date of the cancellation.  The question of whether there is a waiver is determined by what the parties say and what they do, that is known to the other side.

"The definition of waiver is, that it is an intentional relinquishment of a known right.  It may be proved by words or acts.  It may arise from an inference from all the attendant facts.  It may be inferred from such a course of acts and conduct as to induce a belief in the other party to the contract that a waiver is intended.  It is a voluntary choice not to claim.  This is the essence of a waiver.

"Accepting and paying for a carload of lumber is a waiver of the delay in the delivery of that car so far as delay is a ground of cancellation.  Accepting and paying for the kiln dried lumber deprives the defendants of any right to cancel the contract on the ground that kiln dried lumber was delivered; whether you will consider the fact that kiln dried lumber was delivered or consider the other questions that have been presented here is for you, but the acceptance of

that binds the party who received that as a substitute for the other and prevents it from cancelling it on that ground."

That portion of the charge to the jury which related to ratable shipment by the plaintiff to its customers was as follows: "The next ground which is claimed as one of the excuses for not delivering more lumber is the shortage of cars and that is if there is a shortage of cars; if a person who is bound to ship under a contract with that provision in it, cannot ship because of a shortage of cars that is an excuse and that justifies a delay in shipment, or a failure to ship, provided it is established. There is another thing to be considered in connection with that and that is the question of the shipments provided there is a limited number of cars and a large number of orders, then how are the defendants, who have bought lumber, or these defendants rather, entitled to be treated. The seller is not liable for deficiencies in shipments due to car shortage or other causes beyond its control, the plaintiff is the seller, if he treated the buyer fairly and ratably with reference to other persons with whom he was dealing; he would not be required under his contract to deliver the buyer the whole amount to the exclusion of other customers; he cannot, however, make new contracts after the exigency as to cars arises and fulfill them and thus discriminate in favor of those other customers. In deciding whether the customers were treated ratably and fairly you are to have that in mind, whether there were other contracts taken after the car shortage existed and were those filled in preference to orders given by these defendants, and if so were they filled in sections where there was no embargo and where they could get through, or were they filled in sections where there was an embargo and it was difficult to get through. That whole problem is for you to consider in deciding the question if causes beyond the control of this plaintiff prevented it from delivering more of the defendants' order than was delivered."

On the question of loss of profits by the plaintiff on goods ordered but not manufactured because of the defendants' cancellation, the judge charged: "The next claim of damages

relates to a claim for a loss of profit on all goods ordered, concerning which nothing had been done. They had a right under their contract to make a profit, if there was a profit on them, on all of these goods, and if the defendants have unjustifiably cancelled the contract so the plaintiff is entitled to damages, he is entitled to the loss of his profit on them. You see that you have to have in mind the total number of feet shipped, the total number that were applied, — manufactured and applied to this contract and then decide, — or get the balance first, then decide what the profit per thousand on that is, what the total sum is, having in mind, as I said originally, if you assess damages, the duty on the part of the plaintiff to pay freight and pay commission, $2.34 to the defendants."

The instructions in the charge dealing with the effect of correspondence between the parties after the cancellation was as follows: "In regard to the letters, what the parties did about the time of cancellation. They were not admitted for the purpose of showing efforts to compromise, or to lead you to any conclusion for or against either party because of their failure to enter into an arbitration agreement, or anything of that kind, but in my view of the law it was important to know what led up to the cancellation, the ground on which the cancellation was made and the attitude of the other party to the affair as to the cancellation, did they assent to it, did they seem to do so, or did they still insist on their contract and without revision, and on that theory it seemed to me fair that the correspondence at that time, even if other things went into the letters, was open for the consideration of the jury so as to aid them in deciding what the real ground of cancellation was and what the attitude of the plaintiff toward cancellation was."

At the close of the charge, the defendants excepted: "First, to that portion of the charge dealing with waiver; second, to that portion of the charge in which the court stated in substance that if the plaintiff treated the buyer fairly with reference to other customers and supplied the buyer ratably that the plaintiff did its full duty to the defendants with reference to shipments, as there is no evidence on which the

jury can find that these defendants were treated ratably as other customers, or that there were other customers with equal rating, the court's attention being called to the fact that the plaintiff, having the means of knowledge of the local situation with respect to cars and to some embargoes existent within its knowledge, entered into this contract obligating itself to ship in approximately equal monthly instalments at least beginning the first of August; third, that the plaintiff is entitled to loss of profit on the balance unmanufactured; fourth, to that portion of the charge with respect to interest; fifth, to that portion of the charge dealing with the effect of the correspondence between the parties after the date of the cancellation."

In the defendants' brief before this court, there was no argument as to the fourth exception above stated.

There was a verdict for the plaintiff in the sum of $57,286.-66. The defendants alleged exceptions.

*T. W. Proctor,* (*F. W. Grinnell* with him,) for the defendants.

*C. F. Choate, Jr.,* for the plaintiff.

CARROLL, J. The plaintiff manufactures lumber in South Carolina. The defendants are lumber merchants in Boston. The action is in contract to recover damages for the breach of a contract for the purchase of lumber by the defendants. In the Superior Court there was a verdict for the plaintiff. The case is here on the defendants' exceptions to the court's rulings, and to the admission of evidence.

On May 10, 1920, the defendants made a written contract with the General Electric Company to supply it with lumber at its plants in Schenectady in the State of New York, Pittsfield in this Commonwealth, Erie in the State of Pennsylvania, and Bloomfield in the State of New Jersey; provision was made therein for a modification in price in the event of a general price revision. To fulfil the contract the defendants made the contract in suit to purchase lumber from the plaintiff, dated July 2, 1920; it was executed by the plaintiff on July 27, 1920, and a short time thereafter was signed by the defendants. It required a minimum of three million feet of lumber, with a maximum of four million feet, at the defendants' option. Deliveries were to be in such

quantities and at such times as the defendants ordered, shipments to be in "approximately equal monthly quantities during the contract period," the seller agreeing to make extra heavy shipments "during the fall months." There was no provision in the contract between the plaintiff and defendants for a price reduction in the event of a general price revision in the market. The purchaser had the right to route all shipments. No time limit was set for performance but it seems to have been assumed that it was to be completed in one year. One of the clauses was, "This contract subject to delay from strikes, accidents, wreck of cars containing goods, or other causes beyond our control, and subject to cancellation from destruction of our mill." The defendants gave various orders for lumber; in August, September and October the plaintiff shipped a total of twenty-five cars. The defendants wrote the plaintiff, requesting more deliveries of lumber in August. The plaintiff's sales manager wrote excusing delay on the ground of continued rain. At the trial the plaintiff relied upon a car shortage as the reason for its delay. The defendants granted a price revision to the General Electric Company in October, 1920, and wrote the plaintiff asking it to revise its price for the lumber. The plaintiff refused, and later, by letter of October 25, repeated its refusal. The defendants telegraphed the plaintiff's mill to stop all shipments, and on October 26, notified the plaintiff that owing to its failure to perform the contract and make deliveries, the defendants cancelled the contract.

There was evidence that in August the plaintiff was ready to ship additional lumber, but was prevented by railroad embargoes and a shortage of railroad cars; that in September it endeavored to make more deliveries, but found it impossible for the same reasons; and that like conditions existed in October. We consider the defendants' exceptions in the order they are argued in their brief.

1. The defendants moved for a directed verdict. The refusal to allow this motion raises the main question in the case. The plaintiff relies for its failure to make shipments on the clause in the contract excusing delay because of

"causes beyond our control." In answer, the defendants contend that by relying on this clause the plaintiff is suing on a defence, and not on a performance. If the contract contained no clause excusing the plaintiff from performance, and the delay was so important that it amounted to a breach of the contract, the defendants could have refused to go on and could have brought an action for the plaintiff's non-performance. Whether the breach was serious enough to justify the' defendants in refusing further performance, as a general rule, is a question of fact for the jury. *Casavant* v. *Sherman,* 213 Mass. 23, 27. *National Machine & Tool Co.* v. *Standard Shoe Machinery Co.* 181 Mass. 275. *Eastern Forge Co. of Massachusetts* v. *Corbin,* 182 Mass. 590, 593. *Dudley* v. *Wye,* 230 Mass. 350. *Miller* v. *Benjamin,* 142 N. Y. 613, 617. If the plaintiff's failure were not so serious as to go to the root of the contract, an action for the defendants' breach would lie. A delay not going to the essence of the contract would not prevent a recovery if the defendants refused to go on with the agreement.

The parties agreed that deliveries of lumber were subject to delay from causes beyond the plaintiff's control. The shortage of cars and the embargo, the jury could find, were beyond its control and were not occasioned by any act or omission of the plaintiff. On this finding the plaintiff was excused from performance within the time agreed. *Durden-Coleman Lumber Co.* v. *William H. Wood Lumber Co.* 221 Mass. 564. See *Garfield & Proctor Coal Co.* v. *Pennsylvania Coal & Coke Co.* 199 Mass. 22, 42. An embargo or shortage of cars might be so permanent and extensive "that the foundation of what the parties are deemed to have had in contemplation has disappeared, and the contract itself has vanished with that foundation." *F. A. Tamplin Steamship Co. Ltd.* v. *Anglo-Mexican Petroleum Products Co. Ltd.* [1916] 2 A. C. 397, 406, 407. See *North German Lloyd* v. *Guaranty Trust Co.* 244 U. S. 12; *Allanwilde Transport Corp.* v. *Vacuum Oil Co.* 248 U. S. 377; *Metropolitan Water Board* v. *Dick, Kerr & Co. Ltd.* [1918] A. C. 119. These cases, however, are not applicable. The conditions were not such that the foundations of the contract were taken away and its per-

formance rendered impossible for such a length of time that the defendants could repudiate it.

2. The defendants contend that there was error in the instruction given the jury, to the effect that time was of the essence if the plaintiff entered into the contract with knowledge of the contract of the defendants with the General Electric Company for the deliveries of lumber, "in the same amounts of the same sizes . . . at the same times," and if it was made for the purpose of supplying the material to enable "the defendants to meet their obligations . . . with the General Electric." We do not find that the defendants excepted to this instruction. It was sufficiently favorable to them. The contract in suit contained no reference to the contract of the defendants with the General Electric Company. The plaintiff's knowledge of such contract was a question of fact. There was no error of law in this instruction.

3. The judge correctly instructed the jury on the question of waiver. The waiver of a claim for damages was not involved. See *Garfield & Proctor Coal Co.* v. *Fitchburg Railroad,* 166 Mass. 119. In the case at bar one of the issues before the jury was the defendants' waiver of the plaintiff's failure to perform. The defendants accepted slow deliveries. The effect of this could be considered by the jury on the question of the defendants' waiver of the right to rescind the contract because of nonperformance by the other party. *Norrington* v. *Wright,* 115 U. S. 188.

4. The defendants excepted to the portion of the charge wherein it was stated in substance that if the plaintiff treated the buyer fairly with reference to its other customers, and supplied the buyer ratably, the plaintiff did its full duty to its customers with reference to shipments. Whether the defendants were treated ratably was a question of fact. There was evidence tending to support the plaintiff's contention that they were so treated, and supplied ratably with other customers. The plaintiff, because of the difficulty in making shipments, was not obliged at its peril to make equal monthly shipments according to the contract, beginning August 1. It was protected by the clause of the contract excusing it from delay arising from causes beyond its control.

5. The defendants excepted to the refusal to give the twentieth request, in effect, that if the defendants were entitled to cancel the contract, their motive was immaterial. On this point the jury were told: "The defendants would have no right to cancel this contract merely because the plaintiff refused to revise the price schedule. No inference should be drawn against any party to a contract if he stands on his contract and on his legal rights under it. Assuming that was the reason for cancellation and the only ground for cancellation that existed at the time, the cancellation would not be justified. Assuming that was a reason for cancellation but at the same time there was a good ground for cancellation because of unreasonable delays in delivery, the defendants would have a right to insist upon the unreasonable delays provided in your consideration of the case you find the delays were a breach of the contract." The request was correctly covered by this instruction and the defendants cannot complain that the exact language of the request was not given.

6. The defendants' seventh request was as follows: "If the plaintiff shipped only four cars in August, and six cars in September, then in the absence of proving an excuse for larger shipments beyond the plaintiff's control, the plaintiff did fail in a substantial manner to perform its contract, and cannot maintain this action." The plaintiff's failure to perform was a question of fact; and the request was properly covered by the remarks of the court on this subject. There was no error in its refusal.

7. The subject matter of the eighth and ninth requests was sufficiently covered in the charge, as was the tenth request. There was no error in refusing the defendants' remaining requests in this connection.

As to the amount of lumber ordered, that too was for the jury; the amount appropriated also was a question of fact. These issues were left to the jury under appropriate instructions.

8. The exceptions to certain testimony of the witness Mills must be overruled. His computations were based in part on lumber manufactured before the contract was made.

The plaintiff was not prevented from appropriating to the contract lumber already manufactured. The testimony of the witness relating to such appropriated lumber was material and relevant.

9. Answers to certain interrogatories filed by the defendants, to be answered by the plaintiff's president, were put in evidence by the defendants. The plaintiff then offered answers to interrogatories 6, 7, 8, 9 and 25. To the admission of these answers the defendants excepted. By G. L. c. 231, § 89, the party interrogated may require the whole of the answers, upon any one subject matter inquired of, to be read, if a part of them is read. The subject matter inquired of by the defendants and the answers given in the interrogatories excepted to, related to the lumber manufactured by the plaintiff during the period covered by the contract. There was a sufficient identity of the matters inquired about to allow the admission of the answers.

10. On the issue of damages the jury were fully and accurately instructed. Many questions of fact were involved, including the question of the available market for the goods. See *McLean* v. *Richardson*, 127 Mass. 339. The duty of the plaintiff to mitigate the damage did not necessarily require the jury to consider the price paid by the General Electric Company to the defendants. The defendants cannot complain because of the refusal to give the nineteenth request.

11. Requests twelve and thirteen, relating to the cancellation of certain portions of the General Electric Company's contract with the defendants, were refused properly. Even if that company cancelled portions of its contract, it would not be conclusive that the defendants were entitled to cancel their contract with the plaintiff, and as we construe the bill of exceptions, the General Electric Company never did cancel any part of its contract. These instructions, therefore, became immaterial.

12. The testimony of the witness Moore was not subject to exception.

We have examined all the questions argued in the defendants' brief. We find no error in the conduct of the trial.

*Exceptions overruled.*