HERBERT R. SANFORD & others *vs.* BOSTON EDISON
COMPANY.

Suffolk.     November 5, 1945. — January 8, 1946.

Present: FIELD, C.J., DOLAN, RONAN, & SPALDING, JJ.

*Labor and Labor Union.    Contract,* With labor union, Performance and
breach.

A provision of a collective bargaining agreement between an employer
and a union of its employees, that the employer would "not by gen-
eral rule or otherwise refuse to recognize [certain] assignments of
wages" made by employees to the union "for the convenience of mem-
bers in paying monthly dues," became unenforceable by the union
against the employer as to assignments by certain of the employees
when later the national labor relations board, acting under U. S. C.
(1940 ed.) Title 29, §§ 151–160, established certain bargaining units
which excluded such employees and, following an election ordered by
it, certified the union as the collective bargaining agent of such units
with such employees excluded: the result of the certification was
that the scope of the authority of the union as bargaining agent under
the agreement was restricted to representing those employees included
in the established units, and that thereafter the union had no authority
to represent the excluded employees in dealing with the employer with
respect to the matters covered by the agreement, including the essen-
tial provision as to assignments.

BILL IN EQUITY, filed in the Superior Court on Septem-
ber 2, 1943, seeking to enjoin the defendant from refusing
to recognize any assignments of wages "now and hereafter
in force and effect, in proper form and not revoked, for the
purpose of paying dues to the Union"; also that "the de-
fendant be ordered specifically to perform all the provisions
of the contract executed on or about May 24, 1940, with the
Union, and particularly that it specifically perform all the
provisions of art. 5, § 7, of said contract."

Article 5, § 7, of the contract read as follows: "The
Company will not by general rule or otherwise refuse to
recognize assignments of wages when made in accordance
with the provisions of Chapter 96 of the (Massachusetts)
Acts of 1933."

The assignments of wages were individual, each signed by an employee separately, and were in the following form:

"United Brotherhood of Edison Workers

For the convenience of members in paying Monthly Dues

I hereby request the Boston Edison Company to deduct from my wages the sum of                    and thereafter the sum of fifty cents ($0.50) the last week of each month, and to pay the same to the United Brotherhood of Edison Workers, said sum, which I hereby assign to said Brotherhood from my said wages, being my dues to said Brotherhood.

Name                                        Group No.
Date                                        Dept.        "

The case was heard on a master's report by *Williams*, J.

*F. M. Ives*, (*W. R. Cook* with him,) for the defendant.

*R. C. Evarts*, for the plaintiffs.

RONAN, J.  This bill in equity was brought by certain officers of the United Brotherhood of Edison Workers, a voluntary association, hereinafter referred to as the union, in behalf of themselves and all other members of the union, for specific performance of a written contract dated May 24, 1940, between the union and the defendant, particularly a provision therein whereby the defendant in effect agreed to deduct monthly from the wages of its employees certain amounts in accordance with written assignments executed by these employees and to pay the sums deducted to the union. The bill alleges that the defendant since August 31, 1943, has refused to recognize the assignments of approximately one hundred twenty employees.  A decree sustaining a demurrer has been reversed.  *Sanford* v. *Boston Edison Co*. 316 Mass. 631.  The suit was heard by a master and later, upon his report, by a judge who made additional findings.  All parties have appealed from an interlocutory decree and also from the final decree.

The company and the union entered into a collective bargaining agreement on May 24, 1940.  The preamble to this agreement stated that all present and future employees of the company should be eligible to membership

in the union, including employees "who are without powers of discipline (except as to character and quality of workmanship) including 'working foremen' and 'working supervisors' who are defined as group leaders, working with and directing the activities of a small group of employees and having powers of discipline only as to character and quality of workmanship, but excluding otherwise all employees who are in or above the rank of foreman or supervisor." The company agreed to recognize the union as the exclusive bargaining agent of all of its employees within the definition of that term as used in the preamble. This agreement provided for rates of wages, hours of work, the adjustment of disputes, and other conditions of employment. It also contained a provision, art. 5, § 7, by which the company agreed not to refuse to honor assignments of wages of such employees for the payment of their dues to the union. This agreement also provided, art. 1, § 7, that it was subject to all applicable laws then or thereafter in effect and to the lawful regulations, rulings and orders of commissioners having jurisdiction, and that the agreement should be modified to conform to such laws and regulations. Although disputes had arisen between the company and the union, after this agreement was made, as to whether particular employees on account of the nature of their duties came within the agreement, these disputes had been settled on September 9, 1941, for the time being at least, after the question had been referred to an arbitrator in accordance with the terms of the agreement, who found that most of these employees were included in the agreement. The parties thereafter seemed to adopt that view, and the union continued to be recognized as their bargaining agent. But on January 15, 1943, a rival union petitioned the national labor relations board, hereinafter called the board, in accordance with U. S. C. (1940 ed.) Title 29, § 159 (c), of the national labor relations act, for certification as bargaining agent of all of the employees of the company "except executives, supervisory employees, technical, office, clerical, and other white collar employees." The union filed a similar petition with the board on January 28, 1943.

Both petitions were heard together. The contention of the union that the proceedings were barred by the agreement of May 24, 1940, was overruled, and so was its contention that the bargaining unit should. be the employees included in this agreement. The board established three bargaining units and ordered an' election. It expressly excluded from these units one hundred fifty-nine employees, by name, by job or by definition, mainly on the ground that they had supervisory powers and duties, and refused to permit them to participate in the election. The election was won by the union, and it was certified by the board on August 18, 1943, as the exclusive representative for collective bargaining for these three units, but each of the three certificates expressly stated that the union was the exclusive bargaining agency for all employees in a particular unit except certain persons and those occupying positions that corresponded to the positions of those who had been excluded from the bargaining unit and from the election. The company notified the union that it would not check off the union dues from the wages of those employees who were excluded from representation by the union, and gave a similar notice to these employees. The company terminated the agreement of May 24, 1940, on November 15, 1944. The regional war labor board, acting as agent of the national war labor board created by executive order No. 9017 and exercising the power conferred on it by the war labor disputes act, U. S. C. (1940 ed.) Sup. IV, Title 50, Appendix, § 1501, *et seq.* issued a directive order on November 14, 1944, that the terms and conditions of employment in effect in the contract that would expire on November 15, 1944, should govern the relations between the parties until the parties should make a new agreement or until the national war labor board should otherwise direct. This order recited that it was not to be construed as applying to the present suit.

The principal question presented for decision is whether the company is excused from checking off wages of those employees who were, by the decision of the board, excluded from the bargaining units and from being represented by the union in. bargaining with the company.

The determination of the units that would be most appropriate for carrying out the purposes of the national labor relations act, U. S. C. (1940 ed.) Title 29, §§ 151–160, hereinafter called the act, ordinarily rests in the sound discretion of the board. Congress has not furnished any inflexible rules limiting the choice of the board, except that the unit shall be an "employer unit, craft unit, plant unit, or subdivision thereof," § 159 (b), and that the unit selected shall be such as shall give the employees full exercise of their rights to self organization and the full benefit of collective bargaining and shall best carry out the policies of the act. *Pittsburgh Plate Glass Co.* v. *National Labor Relations Board,* 313 U. S. 146. *National Labor Relations Board* v. *Hearst Publications, Inc.* 322 U. S. 111, 134. See *Jordan Marsh Co.* v. *Labor Relations Commission,* 316 Mass. 748. The exercise of the power conferred upon the board by the act, U. S. C. (1940 ed.) Title 29, §§ 151–160, could not be limited by any private agreement between the company and the union, and the board was right in ruling that the proceedings for certification of a bargaining agent were not barred by this agreement and in refusing to adopt as a bargaining unit the group of employees who the union contended were covered by this agreement. *National Licorice Co.* v. *National Labor Relations Board,* 309 U. S. 350. *J. I. Case Co.* v. *National Labor Relations Board,* 321 U. S. 332. The board was not a tribunal for the settlement and enforcement of private rights under a private contract, *Amalgamated Utility Workers* v. *Consolidated Edison Co. of New York,* 309 U. S. 261, 268, but it was acting as a public agency for the purpose of effectuating the public policy of the act, which is the elimination and prevention of obstructions to interstate commerce by strikes and industrial disputes, and this object could best be accomplished by protecting and encouraging the full exercise by workmen of their rights to self organization and freedom in the selection of their representative for collective bargaining. *National Licorice Co.* v. *National Labor Relations Board,* 309 U. S. 350, 362.

The certification of the union as bargaining agent for

the three units was final and conclusive where no subsequent proceedings were taken to review or set aside the certification. *American Federation of Labor* v. *National Labor Relations Board,* 308 U. S. 401, 412. *Inland Empire District Council, Lumber & Sawmill Workers Union* v. *Millis,* 325 U. S. 697. But the certification expressly provided that the representation of the union did not include the employees now in question. True it is, that the board declined to designate as the exclusive bargaining agency a union whose membership included employees engaged in production and maintenance work for a certain employer and also employees of the same employer who were engaged in supervisory duties and who in a practical sense, by virtue of the character of their employment, were really representatives of their employer. *Maryland Drydock Co.* 49 N. L. R. B. 733. *Packard Motor Car Co.* 61 N. L. R. B. 4. The effect of the certificates designating the union as the exclusive bargaining agency was a denial by the board of the request of the union for authority to represent all the employees, and thereafter the union had no authority to represent these supervisory employees in dealing with the defendant with respect to their rates of pay, wages, hours of employment and other conditions of employment. This limitation upon the authority of the union as the bargaining agency, as thus fixed and defined by the board, could not, we think, be removed by any private agreement between the union and the company. *J. I. Case Co.* v. *National Labor Relations Board,* 321 U. S. 332. *Order of Railroad Telegraphers* v. *Railway Express Agency, Inc.* 321 U. S. 342.

The validity of the agreement of May 24, 1940, was not in issue in the certification proceedings. The board acted independently of this agreement. The effect of the certification upon the agreement remains to be considered. It is plain that if the union after the certification, relying upon this collective bargaining agreement, demanded higher wages or shorter hours for some of these supervisory employees, the company had the right to refuse to recognize the union as the bargaining agency of these employees.

The company was required to recognize the union as the bargaining agency of those included in the bargaining unit, and it was equally bound not to recognize the union as the bargaining agency of the supervisory employees. Otherwise, the policy of the act as interpreted by the board and as expressed in the certification proceedings would be thwarted. See *R. H. White Co.* v. *Murphy*, 310 Mass. 510, 516; *Medo Photo Supply Corp.* v. *National Labor Relations Board*, 321 U. S. 678, 684. It was stated by the board in *Maryland Drydock Co.* 49 N. L. R. B. 733, 741, in deciding that foremen should be excluded from a bargaining unit, that "we have not intended, and we do not now intend to disrupt the rights which such supervisors may have obtained under collective agreements." It was decided in *Consolidated Edison Co.* v. *National Labor Relations Board*, 305 U. S. 197, that the board had no authority to order the employer to refuse to recognize collective agreements fairly and voluntarily made with a labor organization which represented eighty per cent of the employees. In *National Licorice Co.* v. *National Labor Relations Board*, 309 U. S. 350, the board was held to have authority to order the employer not to carry out any individual contracts of employment which were found to have been made in violation of the act. As to the rights of the individual employees under these contracts it was said, at page 365, "It [the effect of the board's order] does not foreclose the employees from taking any action to secure an adjudication upon the contracts, nor prejudge their rights in the event of such adjudication. We do not now consider their nature and extent. It is sufficient to say here that it will not be open to any tribunal to compel the employer to perform the acts, which, even though he has bound himself by contract to do them, would violate the Board's order or be inconsistent with any part of it." We think it would be inconsistent with the certificates of certification, which excluded the union from representing these supervisory employees as their collective bargaining agency with the company, to compel the company to recognize the union as such agency for the enforcement of the collective bar-

gaining agreement of May 24, 1940, in so far as it applied to these supervisory employees. The result of the certification was that the scope of the authority of the union as bargaining agent under the agreement' was restricted to those employees who the board ruled were represented by the union. We are led to the same conclusion whether we consider further performance by the company of the terms of the collective agreement in so far as they apply to these supervisory employees as excused on the ground that such performance has become impossible by operation of law, *Baylies* v. *Fettyplace,* 7 Mass. 325, 331; *Commonwealth* v. *Eagle Fire Ins. Co.* 14 Allen, 344; *Kares* v. *Covell,* 180 Mass. 206; *Webb Granite & Construction Co.* v. *Worcester,* 187 Mass. 385; *American Circular Loom Co.* v. *Wilson,* 198 Mass. 182, 211; *Hill* v. *Baker,* 205 Mass. 303; *Louisville & Nashville Railroad* v. *Mottley,* 219 U. S. 467; *Omnia Commercial Co. Inc.* v. *United States,* 261 U. S. 502; *Norman* v. *Baltimore & Ohio Railroad,* 294 U. S. 240; *American Mercantile Exchange* v. *Blunt,* 102 Maine, 128; *Matter of Kramer & Uchitelle, Inc.* 288 N. Y. 467; Williston, Contracts (Rev. ed.) § 1938; Am. Law Inst. Restatement: Contracts, § 458, or on the ground that the decision of the board in certifying the union was a rule or regulation which came within art. 1, § 7, of the agreement and therefore provided for the modification of the agreement so as to comply with the terms and conditions of the certificates of certification. The parties to the agreement had the right to provide for the happening of such a contingency and to stipulate that in that event their agreement should not terminate but should be modified in a certain manner. *Davis* v. *Columbia Coal Mining Co.* 170 Mass. 391. *New England Concrete Construction Co.* v. *Shepard & Morse Lumber· Co.* 220 Mass. 207. *Wellington Piano Case Co.* v. *Garfield & Proctor Coal Co.* 236 Mass. 544. *Bradley Lumber & Manuf. Co.* v. *Cutler,* 253 Mass. 37.

The union contends that a check-off is not a matter necessarily included within the power conferred upon a collective bargaining agency by certification of the board, and therefore that this provision of the collective bar-

gaining agreement between the union and the company was not affected by the certification. It relies upon the case of *Hughes Tool Co.* v. *National Labor Relations Board,* 147 Fed. (2d) 69, 74, in which it was said that "The collection of dues by a union from its members is not in its nature a matter for collective bargaining." That case is distinguishable from the instant case, where the immediate question is not primarily whether the check-off is one of the conditions of employment under the act but whether an entire and indivisible collective bargaining agreement, which provides for rates of wages, the check-off, hours of employment, and other conditions of employment, can still be construed to extend to those whom the board has refused to permit the union to represent as their bargaining agency. We think that they cannot thereafter be considered as covered by this collective bargaining agreement. The provision for the check-off falls with all other provisions of the agreement in so far as they pertain to those supervisory employees. The check-off was an essential term of the agreement. An employer was ordered in *Virginia Electric & Power Co.* v. *National Labor Relations Board,* 319 U. S. 533, not to recognize a collective bargaining agreement made with a company dominated union and to reimburse the employees for dues checked off and paid over to the union. That a check-off is an appropriate subject matter to be covered by a collective bargaining agreement is plainly indicated by *National Labor Relations Board* v. *Reed & Prince Manuf. Co.* 118 Fed. (2d) 874, 883, *Utah Copper Co.* v. *National Labor Relations Board,* 139 Fed. (2d) 788, 791, and *National Labor Relations Board* v. *Baltimore Transit Co.* 140 Fed. (2d) 51, 58. See *Borderland Coal Corp.* v. *International Organization of United Mine Workers of America,* 275 Fed. 871; *Local 60 of Industrial Union of Marine & Shipbuilding Workers of America* v. *Welin Davit & Boat Corp.* 133 N. J. Eq. 551; *Greenwald* v. *Chiarella,* 57 N. Y. Sup. (2d) 765; *Pacific Mills* v. *Textile Workers' Union of America, Local No. 254,* 197 S. C. 330.

The exclusion of the supervisory employees from the bargaining unit excluded them from the collective bar-

gaining agreement. It follows that the interlocutory decree is affirmed, but the final decree must be reversed and a final decree entered dismissing the bill.

*So ordered.*