MAX SHINE *et al. vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

AUGUST 16, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This suit in equity was brought by certain former members of a labor union to enjoin their employer from further deducting dues from their wages and paying them to that union under a collective bargaining agreement and for other incidental relief.   After a hearing in the superior court on bill, answers and proof, a final decree was entered denying and dismissing the bill of complaint.   From that decree the complainants duly prosecuted their appeal to this court.

The evidence is practically undisputed.   The complainants are Max Shine and three named persons suing individually and in behalf of 151 others, all of whom were employed as district agents by the respondent insurance company.   They belonged to the "Industrial Insurance Agents Union Local 36," hereinafter called the local, a voluntary association which was affiliated with the United Office and Professional Workers of America, a national union hereinafter referred to as the union.   In the superior court the union was permitted to intervene as a party respondent.   The named respondent is the John Hancock Mutual Life Insurance Company, hereinafter called the company, which does an insurance business in practically all parts of the United States.

Following an independent poll of most of its district agents, including those in Rhode Island, the company accepted the intervening respondent union as the bargaining representative for such agents in certain specified parts of the country.   On February 21, 1945 the company and the union entered into a collective bargaining agreement governing the wages, hours and conditions of employment for its district agents in those districts where

the union had been approved as the bargaining representative.

Article III of that agreement provides in part as follows:

"It is further agreed that employment or the continuation thereof shall not be dependent upon or affected by membership in the Union or the discontinuation thereof."

Said article further states:

"It is agreed that all District Agents of the Company covered by this agreement now or at any time during the period thereof (except as provided in Article V) shall be required to pay to the Union, Union dues, initiation fee and assessments, or, as an alternative thereto, a sum of money equivalent to Union dues, initiation fee and assessments, to any national charity selected in the sole discretion of the Company if the District Agent so elects, in the manner and subject to the limitations of Article IV; provided, however, that no such charity shall by reason of the foregoing provision acquire any rights hereunder.

Any District Agent may make the election above provided for only by giving notice to the Company in writing, within fifteen (15) days from the execution of this agreement in the case of a District Agent employed on the date this agreement is executed; all other District Agents subject to the provisions of this Article III and employed after the date of the execution of this agreement shall have thirty (30) days from the date of employment in which to notify the Company in writing of the election provided in this Article III."

By article XVII of the agreement it is further provided:

"This agreement shall be in force from the date of its execution until January 1, 1948 and shall continue in force thereafter until terminated by either party on sixty (60) days' notice, which notice shall be in writing and shall be sent by registered mail to the address of the party appearing herein."

Pursuant to such agreement the complainants, with one exception, thereafter individually authorized the company to deduct specified amounts from their wages and to pay them to the union as dues. By a further agreement, dated

December 5, 1946, between the company and the union the collective bargaining agreement was amended and extended so as to continue in force until January 1, 1949 and "thereafter until terminated by either party on sixty (60) days' notice" in writing.

The local, of which the complainants were then members, by formal vote disapproved such amendment and extension. Thereafter the union notified the local that its charter was suspended and subsequently, on May 9, 1947, at a duly called special meeting the local voted to sever all relations with and to disaffiliate from the union. Notice thereof was sent to both the union and the employer, and the complainants also sent to the company revocations of their previous authorizations covering the "check off" of dues out of their wages. On May 31, 1947 the union, through its secretary and treasurer, notified the local that the charter of Local 36 was formally revoked by the union. Max Shine, president thereof, also was expelled from the union for his alleged illegal acts.

The employer, notwithstanding receipt of such notice and revocations of the prior assignments of dues to the union, advised the complainants that the company would continue to deduct such dues and pay them to the union in accordance with the bargaining agreement. The instant suit was then commenced, and by virtue of an interlocutory decree the company was permitted to continue deductions from the wages of complainants but was required to retain such amounts pending final determination of the suit.

At the hearing in the superior court many exhibits were presented in evidence to substantiate the above-mentioned and other facts thought to be important. It was also agreed that some of the complainants were employed by the company at the time of the collective bargaining agreement; that several of them first became employed after such agreement was executed; that some of them had left their employment with the company since that time; and that approximately forty-five of the complainants had

*rejoined* the union since this suit was brought, although they apparently had not notified the other complainants or their attorney of that fact. After an extended hearing a decision was rendered denying and dismissing the bill of complaint and a final decree was accordingly entered. The cause is before us on the complainants' appeal from that decree.

Complainants contend chiefly that as members of a voluntary association for an indefinite period they were at liberty to withdraw therefrom at any time without being obligated to continue to pay dues to the union and to have them deducted from their wages under the bargaining agreement. Secondly, they contend that the provisions of that agreement between the company and the union which purported to "check off" union dues is invalid because it violates the state statute regulating assignments of future wages as well as the weekly wage payment law.

The respondents generally assert that the check off as provided for in the collective bargaining agreement is not contrary to those statutes. They also argue that the right of the employees, through their bargaining representative, to provide by a collective bargaining agreement for a check off of dues cannot be restricted because such right is "guaranteed" by the National Labor Relations Act; that such act is paramount and supersedes the state statutes inconsistent therewith; and that the attempted revocation and repudiation by the complainants of the check-off provision of the bargaining agreement is void and of no effect.

In our opinion the decree appealed from was entered upon an erroneous view of the law. It is clear to us that the provisions for the deduction of dues from complainants' wages and the payment thereof to the union are in substance and effect partial assignments of future wages. As such they are governed by general laws 1938, chapter 292, which was then in effect and reads in part as follows: "§1. No assignment of future earnings or wages shall be valid for a period exceeding one year from the date thereof; nor unless

made to secure a debt contracted prior to or simultaneously with the execution of such assignment; nor unless executed in writing in the standard form herein set forth and signed by the assignor in person and not by attorney; nor unless such assignment truly states the date of its execution, the money or the money value of goods actually furnished by the assignee and the rate of interest, if any, to be paid thereon."

Clearly the assignments of wages in the instant case were made for an indefinite period that could exceed one year and they were not made to secure any debt contracted prior to or simultaneously with the execution of such assignments. They also did not conform to the other requirements of this section nor with other sections of the statute as to form and recording. G. L. 1938, chap. 292, §§1, 4.

Furthermore, this statute should be read together with G. L. 1938, chap. 116, §§93, 94, as amended by public laws 1941, chap. 1069, and as further amended by P. L. 1942, chap. 1237, referred to as the weekly wage payment law. Such statute as amended provides in substance that every employer shall pay weekly to his employees the wages *in full* earned by them up to a date therein specified, subject to inevitable casualty, and also that *"no provision of this act can in any way be contravened or set aside by a private agreement * * *."* (italics ours) At the time of these assignments, therefore, the weekly wage payment law expressly prohibited any waiver of its provisions by private agreement between the employer and the employees acting through their bargaining representative.

The respondents, however, argue that the weekly wage payment law and the statute regulating the assignment of wages were intended to serve other purposes and were not intended to regulate or prohibit such assignments as are made pursuant to a collective bargaining agreement. The difficulty with that contention is that whatever may have been the supposed intent of the legislature in that regard, the language used by it to express its purposes is

unequivocal. The prohibition in the weekly wage payment law against contravening or waiving its provisions by any private agreement and the conditions in the other statute governing the form and substance of assignments of wages are both clear and comprehensive. The language leaves no room for judicial construction. The respondents' contention would have us substitute for the clear and explicit language of the statutes our own speculation as to the legislative purpose, thereby writing into the weekly wage payment law certain exemptions from the comprehensive and explicit prohibition against waiving its terms and into the assignment of wages statute a relaxation of conditions that appear expressly therein. In our opinion that function belongs to the legislature and not to the court. *Romano* v. *Napolitano*, 75 R. I. 512.

Any doubt that the legislature did not intend to make such exemptions at that time is clarified considerably by that body's subsequent action. In later amending G. L. 1938, chap. 292, by enacting P. L. 1947, chap. 1944, regulating assignments of wages, it expressly exempted the check off of dues or other obligations imposed by a collective bargaining contract and subscriptions to a nonprofit hospital service corporation from the operation of the provisions as to assignments of wages. The agreement here was entered into and the assignments and revocations thereof took place before that amendment was approved June 3, 1947. If the statute in its previous form had exempted the check off of union dues from the conditions otherwise governing assignments, as respondents contend, it would have been unnecessary to make such specific amendment. Moreover, by that amendment the legislature significantly did not abrogate the required conditions as to all assignments, which if done might have implied an intent also to change the prohibition against waiving or setting aside the provisions concerning payment of wages in full under the weekly wage payment law; but it apparently

confined the exemptions thereby authorized to assignments in the two specified categories.

In our opinion the purported assignments did not conform to the conditions set forth in the prevailing statute concerning assignments of future wages nor to the requirements of the weekly wage payment law; and it was not lawful at that time for the employer and the union, or the complainants individually, to waive by private agreement the provisions of the weekly wage payment law. In the circumstances, therefore, the provision of the collective bargaining agreement so far as it concerns the mandatory check off of dues out of the wages of the complainants and the payment thereof to the union was invalid and of no force and effect under the then existing statutes of this state.

But the respondents strongly urge that the National Labor Relations Act of Congress is paramount in its sphere and supersedes the state statutes which are inconsistent therewith. As a general proposition of law in a proper case that may be conceded. But before approaching this contention it should be noted that the bargaining agreement, by article XI thereof, specifically states: "It is the intention of the parties hereto to comply with *all state* and federal laws now or hereafter in force and *not to permit the use of any of the provisions of this agreement other than with that result*, and all present or future rulings and regulations of the insurance supervisory officials of the various states shall supersede any provisions of this agreement with which they are inconsistent." (italics ours) When this article is considered in the light of article III of the agreement which provides, in substance, for an open shop, it would seem that the parties themselves intended and agreed by such express terms in the agreement to require that all its provisions must comply with both state and federal law in order to be enforceable.

In any event it is our opinion that nothing in the National Labor Relations Act *requires* the employer to negotiate

*and agree* collectively concerning a mandatory check-off provision as to all employees, particularly where the agreement does not provide for the closed shop. The National Labor Relations Act provides that the duly selected representative for collective bargaining in a proper unit shall be the exclusive representative "of all the employees in such unit for the purposes of collective bargaining in respect to *rates of pay, wages, hours of employment, or other conditions of employment* * * *." (italics ours) 49 Stat. 453, chap. 372, sec. 9. (a). Such language is repeated in the amendment of 1947 to that act as found in 61 Stat. 136, 143, chap. 120, sec. 101. Thus the bargaining agent becomes the sole representative of all employees of an approved or appropriate unit but only as to matters which are essentially the subject of collective bargaining as set forth in the act.

In *Hughes Tool Co.* v. *National Labor Relations Board,* 147 F.2d 69, 74, the United States circuit court of appeals for the fifth circuit stated: "The collection of dues by a union from its members is not in its nature a matter for collective bargaining, which by the Act is limited to agreeing with the employer on rates of pay, wages, hours of employment, and other conditions of employment, together with adjusting grievances between employees and the employer." That court further pointed out in substance that such a provision as between the employer and the union is not improper or illegal, but that no law *commands* such check off under the penalty of being charged with an unfair labor practice if the company refuses to negotiate and agree. On the contrary the court there held: "Where a union serves as such [representative], it looks for its financial support to the agreement of its members to pay dues. The law gives no lien on the wages for the dues."

The proper scope of the National Labor Relations Act, as defined and limited in the *Hughes Tool Co.* case, *supra,* to the effect that a check off was not an inherent essential requirement of that act so as necessarily to bind the em-

ployer to bargain collectively and agree thereto and also to bind all employees, union and nonunion, was cited and followed by the supreme court of Connecticut in *Dillon* v. *American Brass Co.*, 135 Conn. 10. There the court held that the company and the representative of the union had no right by a collective bargaining agreement under the National Labor Relations Act to *compel* a check off of union dues out of the wages of nonunion employees.

A similar result was reached in *Braddom* v. *Three Point Coal Corp.*, 288 Ky. 734. In that case the basic facts are similar to those in the instant case. The action was brought by former members of a union to recover amounts deducted under a collective bargaining agreement from their wages during a certain period after they had withdrawn from the union and had revoked the assignments of wages originally made pursuant to that agreement. Those assignments to check off union dues read substantially the same as those in the instant case and, as here, were later revoked when the complainants withdrew from the union.

The supreme court of Kentucky conceded that collective bargaining agreements as such were thoroughly established in that state. Nevertheless it refused to validate those assignments of wages by the complainants, even though a collective bargaining agreement was otherwise in effect, for the period after the complainants had ceased to be members of the union. The decision was rested upon the narrower ground that membership in a voluntary association or union for an indefinite term justified withdrawal from such union without a continuing obligation to have deductions for union dues made by the employer under a collective bargaining agreement. But in view of the facts and the agreement before the court, the result in that case in our judgment is entirely consistent with the *rationale* of the cases above cited and the conclusions that we have reached in the instant case.

The respondents in contending that such assignments do not violate the pertinent state statutes rely chiefly on the

authority of *Greenwald* v. *Chiarella*, 271 App. Div. 213. In our opinion that case is clearly distinguishable. There the employer and a barbers' union entered into a closed shop agreement whereby only union members could be employed. If union members were not available, the employer might hire nonunion members temporarily, provided they immediately applied for membership in the union. If they did not apply or were not accepted the employer was required to discharge them. The employer hired two nonunion members who declined to apply for membership in the union and the employer refused to discharge them. The action was then commenced by the union against the employer to recover the amounts of initiation fees and dues which should have been deducted by the employer under a check-off provision in the collective bargaining agreement. The appellate division ultimately, by a three to two decision, sustained the plaintiff's right to a judgment.

It is to be noted that the action in that case was *by the union* against *the employer* and not, as here, by former or nonunion members against the employer and the union. Secondly, and far more important, the New York court held that such provision for a check off of dues under a closed shop contract was not in violation of that state's labor laws concerning weekly wage payments and assignments of wages. The ground of the decision is that the pertinent provisions of those laws, as summarized in the opinion, prohibit *only* such assignments as were "for the benefit of the employer." Here the pertinent statute does not make that qualification. Obviously that is a major difference between the New York and Rhode Island statutes and clearly distinguishes that case from the one before us. The *Greenwald* case, therefore, does not weaken the authorities offered by the complainants nor does it really support the respondents' broad contention as made in the instant case. Indeed, it may be argued by inference that the court would have reached a different result if the pertinent New York laws had been like the Rhode Island statutes.

The respondents, in support of their contention that in any event the National Labor Relations Act is paramount to the statutes of this state and "guarantees" the right of the union to have a check off of dues out of the employees' wages, further rely substantially on the cases of *National Labor Relations Board* v. *Reed & Prince Mfg. Co.,* 118 F.2d 874, and *Sanford* v. *Boston Edison Co.,* 319 Mass. 55. In our opinion neither of these cases present the same provisions of a collective bargaining agreement and issues that are before us and neither one holds anything necessarily contrary to our conclusions on the issue here.

The *Reed & Prince Mfg. Co.* case, *supra,* was a proceeding by the National Labor Relations Board to compel a company employer to cease unfair labor practices and to bargain collectively with a union that had been chosen by a majority of the employees in a proper unit as their sole collective bargaining representative. In addition to hindering and delaying negotiations with the union for a collective bargaining agreement, the company flatly refused to sign any contract except one containing proposals known to be objectionable to the union. That contract by its terms also would have prevented the employees and union from requesting or demanding *at any time in the future* "either a closed shop agreement or the check-off system so-called." The court stated that such an agreement would have impaired the union's efficacy as a collective bargaining agency and would forestall forever "future collective bargaining upon matters which were 'frequent subjects of negotiation between employers and employees.' National Licorice Co. v. National Labor Relations Board, supra [309 U. S. 350]."

The real question therefore in the *Reed & Prince Mfg. Co.* case, *supra,* hinged on the company's unfair labor practices, including hindering negotiations and refusing to negotiate by insisting upon a contract that would forestall for all time to come negotiations with a bargaining representative concerning a check-off system or a closed shop agreement.

There was no issue whether the employer by virtue of the National Labor Relations Act *must* negotiate and *also agree* upon a check-off system for all employees, union and non-union, at the risk of being found, if it did not so negotiate and agree collectively, to have been guilty of an unfair labor practice as provided by that act.

The extent of the holding in the *Reed & Prince Mfg. Co.* case, *supra,* in respect to the issue it was then deciding is better understood from the authority cited by it, namely, *National Licorice Co.* v. *National Labor Relations Board, supra.* In that case the company had refused to bargain with the approved representative of the employees and deliberately tried, through a company sponsored committee, to interfere with the employees' freedom to choose their own bargaining representative by obtaining individual employee's agreements "not 'to demand a closed shop *or a signed agreement by his employer with any Union.*' " (italics ours) Obviously this provision foreclosed the employee from bargaining for a *closed shop or a signed agreement with the union,* which, as the court stated, are "frequent subjects of negotiation between employers and employees * * *." But that case does not mention the check off of dues, nor does it purport to hold anything further than to protect the individual employee's right to exercise his freedom under the National Labor Relations Act to select his own collective bargaining representative and to be free, in collectively bargaining with the employer, of interference and other unfair labor practices specifically set forth in the act.

We find no holding in the *National Licorice Co.* case, *supra,* that a check-off system is an essential subject matter for mandatory collective bargaining and agreement under the National Labor Relations Act. Further there is nothing in that opinion which in our judgment places a check off of dues on a parity with rates of pay, wages, hours and conditions of employment, so that the inclusion of a provision for such check off in a collective bargaining agree-

ment would be valid and binding on all employees notwithstanding the provision is in violation of a pertinent state statute.

Again in *Sanford* v. *Boston Edison Co., supra,* we do not find, as contended in the respondents' brief and as apparently accepted by the trial justice, that the court there "ordered the employer to carry out the check-off provisions of an agreement with its employees." As a matter of fact the bill was brought to compel the employer to specifically perform a provision in a collective bargaining agreement for check off of dues as to certain supervisory employees, who were included in such agreement, and the bill was dismissed. The court there held in substance that the union had been found by the National Labor Relations Board not to be the bargaining representative for any unit including the supervisory employees who were covered by the bargaining agreement; that the provision in the bargaining agreement for a check off of dues as to those employees was invalid because the union did not lawfully represent such unit; and that the provision for check off therefore would not be enforced as to those supervisory employees because the contract was entire and indivisible and such provision necessarily would fall with the collective bargaining agreement.

In the course of its decision, after the court appears to us to have decided the principal issue before it on the grounds stated therein, it adverted to a contention by the union that "a check-off is not a matter necessarily included within the power conferred upon a collective bargaining agency by certification of the board, and therefore that this provision of the collective bargaining agreement between the union and the company was not affected by the certification." Replying thereto the court expressly distinguished the issue then before it from that in the case of *Hughes Tool Co.* v. *National Labor Relations Board, supra,* which was relied upon by the union. It pointed out that the immediate question in the *Sanford* case was not primarily

"whether the check-off is one of the conditions of employment under the act but whether an entire and indivisible collective bargaining agreement, which provides for rates of wages, the check-off, hours of employment, and other conditions of employment, can still be construed to extend to those whom the board has refused to permit the union to represent as their bargaining agency."

In our judgment the statement in the *Sanford* case "That a check-off is an appropriate subject matter to be covered by a collective bargaining agreement is plainly indicated by *National Labor Relations Board* v. *Reed & Prince Manuf. Co.* 118 Fed. (2d) 874, 883 * * *" was not intended and does not amount to a holding by that court that the National Labor Relations Act *requires* the employer to bargain collectively concerning a check off of dues for all employees and to include in the collective bargaining agreement a provision therefor. Moreover, the assignments of wages in the *Sanford* case were in accordance with the conditions of the Massachusetts statute; and the court expressly distinguished the issue before it from that which was decided in *Hughes Tool Co.* v. *National Labor Relations Board, supra.*

Considering the facts and the issues immediately before the court for decision in *National Labor Relations Board* v. *Reed & Prince Mfg. Co., supra,* and *Sanford* v. *Boston Edison Co., supra,* we find nothing therein necessarily contrary to what we hold as the inherent essential scope of the National Labor Relations Act. We are not confronted here with the question whether it is lawful to negotiate for a check off of dues and to include such a provision for check off in a collective bargaining agreement as between the employer, the union, and members of the union, provided it violates no state statute. The issue in the instant case involves the question whether the employer *must,* as a mandate from the essential terms and requirements of the National Labor Relations Act, bargain collectively for a check off of dues and include such a provision in the bargaining contract or become guilty of an unfair labor prac-

tice, notwithstanding that such provision is contrary to the express terms of the statutes of this state.

In the circumstances of the instant case we find that the National Labor Relations Act by its terms makes mandatory as an essential subject matter for collective bargaining the rates of pay, wages, hours or other conditions of employment, and certain grievances as therein set forth; that a check off of dues out of the wages of the employees is not included thereunder as mandatory; that the provision in the instant collective bargaining agreement purporting to authorize such a check off of dues is in substance and effect an assignment of future wages and violates the assignment of wages statute and the weekly wage payment law of this state, which laws are not inconsistent with the inherent essential scope of the terms of the National Labor Relations Act; and therefore that such provision is not valid and binding upon the complainants and the employer. On that view the decree appealed from is erroneous, and the moneys which have been deducted by the respondent company and held by it subject to the order of the court should now be paid over to the complainants respectively in the amount to which each is entitled.

The complainants' appeal is sustained, the decree appealed from is reversed, and on October 3, 1949, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

### ON MOTION FOR REARGUMENT.

#### DECEMBER 2, 1949.

PER CURIAM. After our decision in the above case the respondent John Hancock Mutual Life Insurance Company and the intervening respondent United Office & Professional Workers of America, CIO, each asked and received permission to file a motion for reargument. Pursuant to this permission each respondent has filed such a motion, setting out therein the grounds on which it bases its contention

that justice requires a reargument of the case. We have carefully considered such grounds and we are of the opinion that they do not warrant a reargument of the case.

Each motion is denied.