## Braddom et al. v. Three Point Coal Corporation et al.

Dec. 19, 1941.

E. L. Morgan for appellants.

H. C. Gillis and Golden & Lay for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

This action was instituted on August 28, 1939, by forty-six members of United Mine Workers of America, District 19, against that organization and their employer, the Three Point Coal Corporation. Nine of them were granted the relief sought, and thirty-six have appealed. In their petition they alleged that their membership in the organization had been obtained "involuntarily and against their will and consent through force, threats, intimidation, mob violence, fraud and coercion"; and that through the same means they had been forced to sign what are known as "check-off" orders, reading as follows:

"I hereby direct the Three Point Coal Company to deduct from my wages all Dues, Assessments and Initiation fees, in accordance with the provisions of our District Wage Agreement by and between the Harlan County Coal Operators Association and the United Mine Workers of America, District 19."

They further alleged that they had resigned as members of the United Mine Workers of America and so notified the Coal Company; that they had also notified the Coal Company not to withhold any portion of their salaries or deliver any part thereof to the Union, but that the Coal Company had disregarded these notices and would continue to turn over to the Union portions of their wages as directed by the check-off orders, unless enjoined by the court from so doing. The prayer of the petition was that the Coal Company be enjoined from deducting any part of their wages for the use or benefit of the Union and that the check-off orders which they had signed, and their memberships in the Union, be cancelled.

In its original and amended "plea to the jurisdiction," to which the chancellor sustained demurrers, the Union alleged in substance that it was a voluntary association of which the plaintiffs were members; that on July 19, 1939, the Union, acting as the exclusive bargaining agent of its members, and the Harlan County Coal Operators Association, of which the Three Point Coal Corporation was a member, entered into a contract and wage agreement, ratified by the Union membership, in which provisions were made for the arbitration and settlement of all disputes which might arise during the continuance of the contract, which, by its terms, expired on March 31, 1941; that the members of the Coal Opera-

tors Association had undertaken "to collect all dues, assessments, and initiation fees as provided by this contract from members of the United Mine Workers of America during the life of this contract on a single written assignment during the period of the contract;" and that "the dispute and contention as set forth in the plaintiffs' petition, is a matter that arises out of a contract to be settled according to the provisions of the contract by arbitration."

Among the provisions of the contract relating to disputes was the following:

"Should any dispute arise between any members of the association covered by this contract, and the union, with respect to the collection of union dues, which cannot otherwise be settled, same shall be referred to the Arbitration Board, and said Arbitration Board shall render a decision promptly, and in any event within thirty days; but it is understood that the check-off provisions of this contract this day signed do not obligate the employer to check-off any card signed prior to April 1, 1939."

It was further alleged that the plaintiffs had failed and refused to avail themselves of the provisions for the settlement of the dispute, and hence, had no right to institute or maintain an action in the courts. Included in the amended plea to the jurisdiction was the allegation that the plaintiffs had signed the check-off orders subsequent to April 1, 1939, and that each of them—"during the recent shut-down and cessation of work in Harlan County, received from the defendant, United Mine Workers of America, aid and relief for themselves and their families for many weeks, including food, clothing, medical aid and medicines, and much other valuable assistance from this Union."

In its answer, the Union admitted the plaintiffs' membership therein; denied that they had resigned as members or cancelled their check-off orders; traversed the other allegations of the petition; and elaborated on the alleged estoppel arising from their acceptance of benefits from the Union. The Coal Company answered, alleging its membership in the Harlan County Coal Operators Association and the provisions of the contract between that association and the Union relating to the check-off. It admitted that it was "making such check-

off from the wages of each of the plaintiffs each month''; that until restrained by the court it had paid "such dues to the Union''; that since it had been restrained it was retaining the dues subject to the decision of the court; and that it had no knowledge or information—"as to how, if at all, a person who has once become a member of the United Mine Workers of America can cease to be such member, nor how this defendant can be relieved from its obligation under said contract to check off dues of any of its employees who were members of said organization at the time said contract became effective, or after that time.''

The affirmative allegations of the answer of the Union were traversed by reply, and thereafter proof on behalf of the plaintiffs was taken. At the conclusion of the evidence, the Union challenged its sufficiency to sustain the claims of certain of the plaintiffs that they had been coerced, whereupon the court dismissed so much of the petition as alleged a cause of action on behalf of thirty-two of them. The remaining fourteen plaintiffs, including the nine who were granted relief by the final judgment, by their subsequent replies, to which the court sustained demurrers, attacked the validity of the check-off orders signed by them upon the additional grounds that they were not bound by the terms of the contract between the Coal Operators Association and the Union; that to enforce the contract would be to hold them in perpetual and involuntary servitude; that the contract violated rights secured them by the Constitution of the United States, and by Section 244 of the Constitution of Kentucky requiring the payment of wages in lawful money; and that the check-off orders were void because the provisions of Sections 4758a-1 to 4758a-4, Kentucky Statutes, inclusive, relative to the assignment or sale of wages for a consideration of less than $200, were not complied with.

The chancellor did not deliver a written opinion, but it is obvious from his rulings on the pleadings that he regarded the check-off orders signed by plaintiffs as binding upon them during the period of the contract between the Union and the Coal Operators Association, either because they were estopped by the acceptance of food and supplies from the Union, or because they had not attempted to arbitrate their grievances in the manner prescribed. We agree with the chancellor that the

check-off orders were not violative of the constitutional or statutory requirements that wages be paid in money, or the statutes relative to the assignment or sale of wages; but, since we have rested our decision upon other grounds, we deem it unnecessary to elaborate upon our reasons for our agreement with the chancellor's conclusions in the respects indicated.

Likewise, in the foregoing resumé of the proceedings in the Circuit Court, we have not deemed it necessary to comment upon the merits of the Union's several motions to require the plaintiffs to elect, or the correctness of the various interlocutory orders of the court bearing upon the issues raised. Indeed, we may have been unnecessarily prolix in describing the numerous issues raised in view of our conclusion that the decision of the case is necessarily controlled by a single factor which discards from consideration, not only many of the allegations of the pleadings, but the proof taken in support of them. If our view is correct, not only were the nine plaintiffs to whom the chancellor granted relief entitled to it, but the remainder who have appealed are also entitled to it. We have attempted to depict the broader outlines of the litigation in order that the principle upon which we have decided it may be emphasized, but not extended in its application beyond the limitations imposed by those outlines. That principle is, that one who joins a voluntary association for an indefinite period may resign therefrom at will and thus terminate his obligation to pay dues not theretofore accrued. Without the scope of this litigation, and hence, not presented for decision, is the effect upon such right of a contract not to exercise it within a definitely limited period or of a duly enacted law of the association in existence at the inception of the membership or thereafter ratified by the member. The clear cut principle upon which we have rested our decision is thus stated in Volume 7, Corpus Juris Secundum, Associations, Section 24, page 57:

"The laws of the association sometimes provide for the withdrawal of members, in which case there can be no withdrawal except in the manner and on the conditions prescribed; but, in the absence of any statute or any law of the association to the contrary, a member may resign or withdraw from the society at his pleasure, and no acceptance of his resignation or withdrawal is necessary to terminate

his membership, where he is under no pecuniary obligation to his associates, although an insolvent association may properly refuse to accept the withdrawal of a member until he has discharged his proportion of its indebtedness.''

See, also, American Jurisprudence, Vol. 4, Section 20, page 468.

Needless to say, it is founded upon the general rule that a contract covering an indefinite period is terminable at the will of either party. The Union does not dispute these universally recognized principles. Indeed, it impliedly, if not expressly, concedes them. It claims, however, that they are not applicable to the case at bar for the reasons set forth in their pleadings, which may be thus summarized: (1) The contract between the Union and the Coal Operators Association expired by its terms on March 31, 1941, and this limitation applied to the check-off orders and bound the plaintiffs to abide by the undertakings of the contract and the by-laws of the Union during that period. (2) That in any event, the plaintiffs could not resort to the courts to terminate their membership in the Union or cancel the check-off orders until they had exhausted the remedies provided in the Union's by-laws and the contract between the Union and the Coal Operators Association for the settlement of disputes. (3) That the plaintiffs were estopped from repudiating their check-off orders by the acceptance of food and other benefits from the Union during the period of shut-down following the expiration of the preceding contract on April 1, 1939. We shall discuss these contentions in their order:

(1) The right of collective bargaining is thoroughly established in this jurisdiction, but the right of a Union to bind its members individually to accept a specific wage or to serve for a definite period, or to surrender what may be generalized as their personal rights, has been explicitly denied. Hudson v. Cincinnati, N. O. & T. P. Ry. Co., 152 Ky. 711, 154 S. W. 47, 45 L. R. A., N. S. 184; Piercy v. Louisville & Nashville Ry. Co., 198 Ky. 477, 248 S. W. 1042, 33 A. L. R. 322. Hence, unless we are to radically depart from our views heretofore expressed, we are impelled to hold that the terms of the contract between the Union and the Coal Operators Association did not supply the time element necessary to

lend definiteness to the otherwise unlimited duration of the period during which the plaintiffs impliedly contracted to remain members of the Union and permit the Coal Company to deduct dues or assessments from their wages.

(2) So thoroughly established is the rule that a member of a voluntary association must resort to its tribunals for the settlement of internal disputes before resorting to the courts that it was unnecessary for appellees' counsel to cite authorities in support of it. Nor shall we dissertate upon its ramifications or exceptions, since it is manifest from the record that it has no application to the case before us. No by-laws or charter provision of the Union prescribes either the duration of membership therein or the method to be pursued by a member desiring to terminate his membership. No tribunal is established to try the right of a member to withdraw, and having exercised that right, the subsequent. dispute over the continued operation of the check-off orders could by no stretch of the imagination be considered within the category of disputes over which the tribunals of the Union have jurisdiction. The suggestion that a member might refuse to pay his dues for three months, and thus, by the terms of one of the by-laws, forfeit his membership, does not meet the difficulty which here confronts the appellees and renders the rule contended for inapplicable.

(3) The doctrine of estoppel, though variously defined and applied, is not a device by which a creditor may compel the payment of his debt as a condition precedent to the exercise by his debtor of an unsurrendered right. Hence, it is not germane to the facts presented by this record. If the furnishing of food and supplies to the plaintiffs created a legal obligation to pay for them, the obligation was an implied contract, to recover damages for the breach of which the Union has a legal remedy. As well might it be said that a debtor owning property is estopped from disposing of it, or that an insolvent debtor is estopped from filing a petition to be adjudged a bankrupt, as to say that the plaintiffs are estopped from resigning from the Union or cancelling their check-off orders. It is obvious that the Union's plea of estoppel is without merit.

The union has moved to dismiss the appeal on the theory that the expiration of the contract between the

742

Union and the Coal Operators Association on March 31, 1941, rendered moot the questions involved. We do not so regard them, since it was necessary to determine the rights of the parties with respect to the dues and assessments held by the Coal Company during the period intervening between the issuance of the temporary restraining order and the expiration of the contract.

Judgment reversed for proceedings consistent with this opinion.

The whole Court sitting.