ALBINI CHABOT *et al. vs.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.

AUGUST 4, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is a bill in equity brought by four individual complainants, on behalf of themselves and thirty-five other individuals with a common interest all being formerly members of a labor union, in order to have their employer enjoined from continuing to deduct dues and assessments from their wages and paying them over to the union under a collective bargaining agreement, and for incidental relief. The cause was heard in the superior court on bill, answers and proof and a final decree was entered denying and dismissing the bill. Thereafter an appeal was duly prosecuted to this court by the complainants.

It appears from the record that before the suit was heard in the superior court the United Office and Professional Workers of America, an unincorporated association and a national union, hereinafter referred to as the union, and its secretary-treasurer were by order of that court permitted to intervene as parties respondent. The other respondent is The Prudential Insurance Company of America, hereinafter called the company, which is engaged in interstate commerce and does an insurance business in this state and in other parts of the United States. The complainants were all industrial insurance agents employed by the company and were previously members of the Industrial Insurance Agents Union, Local 36, an unincorporated subordinate association hereinafter termed the local, which was affiliated with said national union.

It is undisputed that prior to and at the time of the happening of the events which were the cause of the bringing of the present bill the union was, under the provisions of the National Labor Relations Act, the duly authorized and recognized collective bargaining agency for the complainants and others in their dealings with the company. On June 24, 1946 the union and the company had entered into a collective bargaining agreement which by its terms was to continue in force until October 1, 1948 and was automatically to be extended for a period of one year, after which time it was to continue from year to year unless either party should notify the other in writing at least sixty days before October 1, 1948, or before the end of any such yearly period, of its election that it should not be so extended.

The agreement also provided that the company should check off and deduct from the wages of members of the union, after proper authorization by them, monthly union dues to be remitted to the secretary-treasurer of the union provided, however, that any such deduction could be ' terminated by the union member by giving the company written notice thereof, the termination, however, to become effective at the end of the period in which such notice was given. The above agreement, which was substantially national in scope and covered a large number of union members in thirty-one states, contained a provision to the effect that employment would not be conditioned on membership in the union.

The evidence shows that under date of April 21, 1947 the local was notified by letter from the president of the union that it was suspended pursuant to a specific provision of the constitution of the union because of its failure to pay certain assessments, and an administrator was appointed to conduct its affairs. On May 9, 1947 a special meeting of the local was held at which it was voted to sever relations with and disaffiliate from the union. Furthermore the by-laws of the local were thereupon amended

to bring about that result and the name of the local was changed. Under dates of May 24 and June 10, 1947, the company was sent thirty-nine slips signed by the respective complainants, revoking prior authorizations to deduct union dues from their wages and pay such dues to the union. On May 31, 1947 the secretary-treasurer of the union wrote a letter to the local enclosing certain findings and the decision of the executive board in relation to the charges previously made against the local. As a result of such findings and decision the charter of the local was revoked by the union. On June 3, 1947 the company notified the complainants' solicitor that, in spite of the revocations above referred to, it would continue to deduct and check off dues from the complainants' wages.

The instant bill was filed June 12, 1947. It is alleged therein that the deductions which the company threatened to make from the wages of the complainants were unlawful and illegal as being contrary to the provisions of the aforesaid collective bargaining agreement and also contrary to the statutes of this state relating to the weekly payment of wages. The pertinent statute thus relied on is public laws 1941, chapter 1069, as amended by P. L. 1942, chap. 1237, hereinafter called the weekly wage payment law. In referring to the payment of weekly wages, sec. 2 of the chapter last mentioned contains the following language: "Every such employer shall pay such wages in full in lawful money of the United States, or checks on banks, convertible into cash on demand at full face value thereof." Section 5 of chapter 1069 provides among other things that the provisions of the law may not be waived or set aside by a private agreement between employer and employee.

The complainants further argue that as members of a voluntary association for an indefinite period they had the right to withdraw at any time without being obliged to continue to pay dues thereto, and that it is inequitable and improper that they should have to pay such dues by way of checkoff when they are no longer members of

the union which itself first suspended and thereafter revoked the charter of the local to which they belonged.

The respondents, however, maintain in substance that employees, especially a minority in one state for whom a collective bargaining agreement was duly made, may not at will repudiate and cancel it during its term; that the statute of this state regulating the weekly payment of wages does not make illegal the deduction of union dues under an agreement between an employer and an accepted collective bargaining agent; and if a statute of this state prevents check-off provisions in such agreements it cannot properly apply to the facts herein because of its conflict with the National Labor Relations Act and cannot restrain the right to bargain collectively for the checkoff of union dues.

In connection with the issues thus raised P. L. 1947, chap. 1944, which took effect June 3, 1947 and reads as follows, has been called to our attention: "Section 1. Chapter 292 of the general laws, entitled 'Assignment of wages,' as amended, is hereby further amended by adding thereto the following section: 'Sec. 9. *Deduction of Union or Craft Dues.* None of the foregoing sections of this chapter shall be applicable to or control or prohibit the deduction of labor or trade union or craft dues or other obligations imposed by a collective bargaining contract, or subscriptions to a non-profit hospital service corporation established under chapter 719 of the public laws, 1939, from wages of an employee by an employer in accordance with a written request made by the individual employee.' Sec. 2. This act shall take effect upon its passage and all acts and parts of acts inconsistent herewith are hereby repealed."

In the case of *Shine* v. *John Hancock Mutual Life Ins. Co.*, 76 R. I. 71, where the facts closely resemble those in the instant case, we recently had occasion to pass on and discuss fully many of the issues now before us. Strictly speaking in our judgment chapter 1944, which we have

just quoted, has no application in the case at bar since the pertinent collective bargaining agreement was entered into June 24, 1946 and that statute, which is not retroactive, did not go into effect until June 3, 1947. However, in view of certain peculiar facts and extensive arguments appearing in the instant cause, we will assume for the present purposes that such chapter has a bearing herein.

Upon consideration we are of the opinion that in enacting chapter 1944 the general assembly intended to amend and to change *only* the assignment of wages act by providing in substance that such act should not control or prohibit the checkoff of union dues or other obligations imposed by a collective bargaining agreement or subscriptions to a nonprofit hospital service corporation by an employer from his employees' wages in accordance with the latter's written request to that effect. Morever, it is our judgment that chapter 1944 did not in any manner, either directly or by necessary implication, amend the weekly wage payment law of this state. An examination of chapter 1944 shows that by its express language it applies specifically only to the chapter of the general laws relating to assignment of wages, and that it also provides in particular that none of the foregoing sections of that chapter shall prevent the checkoff of union dues and the other matters referred to therein. To give chapter 1944 such a comprehensive and extended construction as would make it apply also to another chapter, namely, the weekly wage payment law, would in effect be writing into the act material provisions which the legislature itself did not see fit to include.

Further it may be noted that P. L. 1947, chap. 1945, which immediately followed chap. 1944 and which also went into effect June 3, 1947, was an amendment to the weekly wage payment law. Significantly, however, it did not contain any reference to checkoff and relates solely to a matter not pertinent herein. It is fair to assume that if the general assembly desired also to amend that law in the same particulars as the assignment of wages act, which

was then being amended by chap. 1944, it knew how to do it and had ample opportunity to do so in the same way. Its express amendment to the assignment of wages statute to permit checkoff thereunder and its failure, while considering both statutes, to make a similar amendment to the weekly wage payment law clearly exhibits an intent not to change the latter statute in that respect.

Finally in the *Shine* case at page 382 of the opinion we stated that chap. 1944 "expressly exempted the check off of dues or other obligations imposed by a collective bargaining contract and subscriptions to a nonprofit hospital service corporation from the operation of the provisions as to assignments of wages. * * * Moreover, by that amendment the legislature significantly did not abrogate the required conditions as to all assignments, which if done might have implied an intent also to change the prohibition against waiving or setting aside the provisions concerning payment of wages in full under the weekly wage payment law; but it apparently confined the exemptions thereby authorized to assignments in the two specified categories."

We find therefore from such express, positive and substantially contemporaneous legislative action that chapter 1944 was not intended to and did not amend or change the existing weekly wage payment law of this state. That being the case, although chapter 1944 did exempt the checkoff of union dues and other specified matters from the operation of the law dealing with the assignment of wages, the weekly wage payment law of this state, so far as checkoff is concerned, remains unamended and with the same force and effect as when the *Shine* case was decided. In accordance with our holding in that case the purported assignments herein do not conform to the requirements of that last-mentioned law and according to its express terms the company, the union, and the individual complainants could not lawfully by private agreement waive the provisions of such law. The fact that it did not expressly

make illegal the deduction of union dues under an agreement between an employer and a collective bargaining agent does not aid the respondents. The comprehensive provisions of that law as now in effect clearly prevent such deductions under any private agreement between employer and employee. In the circumstances we find that the instant collective bargaining agreement, in so far as it concerned the mandatory checkoff of dues out of the wages of complainants and the payment thereof to the union, was invalid and of no force and effect under the existing weekly wage payment law of this state.

However, the respondents urge here, as did the respondents in the *Shine* case, that the National Labor Relations Act and the amendment thereof in 1947, 61 Stat. 136, 143, chap. 120, sec. 101, superseded state statutes which are inconsistent with them. Speaking generally the soundness of such view may be conceded in the proper circumstances. In the case at bar the respondents argue in support of their position that a state law barring check-off provisions in a union agreement could not constitutionally apply to interstate commerce by reason of a conflict with the National Labor Relations Act. In this connection they maintain in substance that sec. 9(a) of the National Labor Relations Act, 49 Stat. 453, chap. 372, provides that the duly selected representative for collective bargaining shall be the exclusive representative of the employees "for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment * * *." They contend that the phrase last quoted, other conditions of employment, should be broadly construed so as to include within its scope the checkoff of union dues thus making that subject mandatory in collective bargaining between employer and employee under the National Labor Relations Act.

We are unable to agree with that contention. Giving the language used its ordinary meaning, checkoff is not a condition of the employment. In our judgment if it was in-

tended that checkoff be a mandatory subject of collective bargaining it would have been expressly included in the act as were rates of pay, wages, and hours of employment. These are clearly conditions of employment but they were specified and not left to interpretation. Checkoff is a matter between the individual and the union and is not reasonably a condition of employment between the individual and the employer.

The respondents have cited no cases and none have come to our attention which support their contention that checkoff is a subject which is *mandatory* under the National Labor Relations Act and therefore that the refusal or failure of an employer to negotiate and agree on that issue becomes an unfair labor practice. On the other hand the above questions raised by the respondents were carefully considered and fully discussed by us in the *Shine* case to which reference may be had for our holdings. In that case we cited authorities which in our opinion supported our decision and distinguished cases relied on by the respondents there and by respondents here. It is unnecessary to review them now.

In deciding the *Shine* case, at page 386 of the opinion we used the following language: "The issue in the instant case involves the question whether the employer *must,* as a mandate from the essential terms and requirements of the National Labor Relations Act, bargain collectively for a check off of dues and include such a provision in the bargaining contract or become guilty of an unfair labor practice, notwithstanding that such provision is contrary to the express terms of the statutes of this state. In the circumstances of the instant case we find that the National Labor Relations Act by its terms makes mandatory as an essential subject matter for collective bargaining the rates of pay, wages, hours or other conditions of employment, and certain grievances as therein set forth; that a check off of dues out of the wages of the employees is not included thereunder as mandatory * * *." These conclusions are

supported by direct holdings in *Hughes Tool Co.* v. *National Labor Relations Board*, 147 F.2d 69, 74. In passing we note that respondents admit that no opinion of the United States supreme court or any federal circuit court of appeals dealing *directly* with mandatory checkoff as inherently essential in the National Labor Relations Act has held contra to the *Hughes* case.

In the present circumstances we are of the opinion that checkoff of union dues, while a proper subject for voluntary collective bargaining between employer and employee, is not mandatory under the provisions of the National Labor Relations Act and its amendment of 1947, so that a refusal to include it would constitute an unfair labor practice; and therefore that such act and amendment did not supersede the provisions of a state statute in full force and effect, such as our weekly wage payment law, which does not permit the checkoff of union dues by an employer even under an agreement of the parties. In our judgment since the congress has not made the checkoff mandatory in collective bargaining, it follows that this state through its weekly wage payment law is not unlawfully attempting to enter a field fully and properly appropriated by the congress; that no question of interference with interstate commerce is involved herein; and that no constitutional problem is raised.

The respondents have also argued that the complainants as employees on whose behalf a collective bargaining agreement was made may not at will repudiate such agreement during its term. This point was considered to some extent in the *Shine* case and we cited therein the case of *Braddom* v. *Three Point Coal Corp.*, 288 Ky. 734, involving an agreement for an indefinite term as being in effect contrary to the position taken by respondents. However, in our opinion a conclusive answer to the respondents' argument in this connection is that we have hereinbefore determined that the collective bargaining agreement under consideration in respect to the matter of checkoff of union dues is in-

valid and of no effect by reason of being contrary to the provisions of the existing weekly wage payment law of this state. For that reason the collective bargaining agreement between the complainants and the company, which is voluntary and not for a definite term, is not binding on the parties and the complainants clearly had the right to withdraw from it if they so desired. They evidenced their wish and intent so to do in the present case by giving to the company notices revoking their previously given authorizations that a checkoff might be made from their wages and payment thereof be made to the union. We perceive nothing improper or illegal in the complainants' conduct in this respect.

Viewing the instant case as a whole it is our conclusion that the basic questions raised are governed largely by our decision in the *Shine* case which we hereby affirm. Accordingly for the reasons hereinbefore set out we hold that the provisions in the present collective bargaining agreement purporting to authorize a checkoff from complainants' wages and payment thereof to the union for dues and assessments are not in that respect valid and binding upon the complainants and the company. The moneys which have been deducted from complainants' wages by the respondent company and held by it subject to the order of the court should now be paid over to the complainants respectively in the amount to which each is entitled.

The complainants' appeal is sustained, the decree appealed from is reversed, and the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

O'CONNELL, J., dissenting. I am unable to agree with the opinion expressed by the other members of the court. The questions before us for determination are: 1. May a minority of the employees in one state unilaterally cancel and repudiate provisions of a union agreement entered into between their duly designated collective bargain-

ing agent and their employer and covering a national unit found appropriate for collective bargaining by the National Labor Relations Board? 2. Are the provisions of the collective labor agreement herein, executed pursuant to the National Labor Relations Act, invalid under the statutes of this state, requiring the weekly payment of wages and restricting their assignment?

I am of the opinion that the first question should be answered in the negative. The complainants and those for whom they sue constitute a minority of the agents employed by the respondent company in the state of Rhode Island and an infinitesimal minority of the agents employed nationally. The agreement involved herein was executed after the respondent company's agents nationally had designated the respondent union as their collective bargaining agent. Such union has been held by the National Labor Relations Board to be the appropriate bargaining agent for this entire group. The contract contained provisions for the payment of union dues and related fees by the agents. These dues were to be deducted from the earnings of all agents who had signed check-off authorization cards and from those other agents who had failed to notify the company to the contrary within a stated period. They were then to be remitted to the respondent union. Upon appropriate notice by employees, the *deductions were to cease on October 1, 1948 or on succeeding anniversaries thereof*. Pursuant to the provisions of this contract, the respondent company made these deductions from June 1946 to June 1947, when a temporary restraining order was issued.

It is undisputed that the labor relations of the respondent insurance company with its district agents are subject to the provisions of the National Labor Relations Act. The principal question here involved is whether a small minority of such agents may within the period for which the contract is to run repudiate a collective bargaining agreement entered into between their employer and their

exclusive bargaining agent which has unquestioned authority under the National Labor Relations Act.

It seems obvious that the answer to this question must be in the negative if collective bargaining is to have meaning and if contracts are to possess any validity or legal stability. A collective bargaining agreement is a contract which is binding upon the union *and its members,* no less than upon the employer. *Dooley* v. *Lehigh Valley Railroad Co. of Pennsylvania,* 130 N.J. Eq. 75; *Local 60 of Industrial Union, Etc.* v. *Welin Davit & Boat Corp.,* 133 N.J. Eq. 551.

As the court stated at page 81 in the *Dooley* case, *supra,* quoting from the language employed in *Christiansen* v. *Local 680, Milk Drivers, Etc.,* 126 N.J. Eq. 508: "A collective bargaining agreement is the joint and several contract of the members of the union, made by the officers of the union as their agents. It is enforceable by or against individual members of the union in matters which affect them peculiarly; and it is enforceable by or against the union in matters which affect all the members alike, or large classes of members, for instance, those who are employes of the other party to the contract."

The majority opinion relies upon the case of *Braddom* v. *Three Point Coal Corp.,* 288 Ky. 734, as authority for the proposition that employees on whose behalf a collective bargaining agreement was made may repudiate such agreement or some of the provisions thereof during its term. I do not believe that the *Braddom* opinion goes as far as that nor has it generally been so regarded. While the suit was one to revoke the checkoff of dues, the court concerned itself principally with the question of compulsory union membership, which is not involved in the instant cause. Thus at page 739 it stated the following to be the basic principle upheld in the case: "That principle is, that one who joins a voluntary association for an indefinite period may resign therefrom at will and thus

terminate his obligation to pay dues not theretofore accrued."

It accordingly stated at page 740: "* * * we are impelled to hold that the terms of the contract between the Union and the Coal Operators Association did not supply the time element necessary to lend *definiteness* to the *otherwise unlimited* duration of the period during which the plaintiffs impliedly contracted to remain members of the Union and *permit the Coal Company to deduct dues or assessments from their wages.*" (italics mine) If "definiteness" as used in the *Braddom* case is relevant, such definiteness is certainly present in the instant cause. The time limitations are set forth in the contract itself. The individual agent had the right to terminate checkoff "by giving the employer written notice of desire for such termination" effective on October 1, 1948 or on any anniversary thereafter. The agents collectively could prevent a renewal of the agreement by filing a petition for certification of another union or the decertification of this union under the National Labor Relations Act. They did not, however, seek relief from the check-off provisions of the agreement in accordance with and in the manner provided by the agreement, but sought relief through an attempted repudiation of the contract itself.

The *Braddom* case, *supra,* has never been regarded as authority for the proposition that a dissident union member may repudiate a collective labor agreement executed by the exclusive bargaining agent. On the contrary, its own language as expressed at page 739 appears to accept the principle of majority rule and contract sanctity. Furthermore, a later case in the same jurisdiction, *Day* v. *Louisville & N. R. Co.,* 295 Ky. 679, expressly holds that a contract lawfully entered into by means of collective bargaining cannot be set aside by an individual who considers himself aggrieved by a particular provision of the agreement. That is the rule of law enunciated by courts of other jurisdictions and by the National Labor Relations Board.

I am also of the opinion that the second question should be answered in the negative. While the National Labor Relations Act as originally enacted made no express mention of the checkoff, it is well settled as a matter of law that the checkoff of union dues is one of the things concerning which employees are guaranteed the right to bargain collectively and to provide for by agreement with their employers. *Sanford* v. *Boston Edison Co.*, 319 Mass. 55, citing numerous cases; *National Labor Relations Board* v. *Reed & Prince Mfg. Co.*, 118 F.2d 874.

The amendments to the National Labor Relations Act which were made by the Taft-Hartley Act (Labor Management Relations Act 1947) give express recognition to the checkoff as one of the inherent essentials of the process of collective bargaining by prescribing the manner in which and the conditions under which the checkoff may be provided for. I am of the opinion that even if the Rhode Island "Weekly Payment of Wages Act" and the assignment of wages statute, or either of them, are construed as restricting or prohibiting a checkoff, the fact that congress has legislated in the field would supersede the operation and effect of the state statutes in the premises. See article VI, par. 2, of the constitution of the United States.

It is well settled that state laws may not constitutionally derogate from the federal right to bargain collectively. It is fundamental that where congress has occupied a field the states are thereby excluded from legislating contrariwise therein. *Erie R.R.* v. *People of the State of New York*, 233 U. S. 671; *Charleston & Western Carolina Ry.* v. *Varnville Furniture Co.*, 237 U. S. 597; *Oregon-Washington Railroad & Navigation Co.* v. *State of Washington*, 270 U. S. 87. And any attempt by the states by statute or otherwise to limit or restrict the exercise of rights guaranteed by congressional enactment or to interfere in matters within the scope of congressional legislation is of no effect. *Hill* v. *Florida*, 325 U. S. 538, and cases cited.

I am impelled to the conclusion that in a field where the

federal government has operated and given sanction to certain procedures and laws the federal law must govern; that any state constitution or state law in conflict therewith is superseded and no longer applicable; and that the supremacy of the federal constitution and statutes is unquestioned.

For the reasons stated above, I dissent from the conclusions expressed by the other members of the court and am of the opinion that the trial justice was fully warranted and justified under the evidence presented herein and the law applicable thereto in denying and dismissing the bill of complaint. I am of the further opinion that the complainants' appeal should be denied and dismissed, and that the decree appealed from should be affirmed.

*James J. McAleer, Ambrose W. Carroll,* for complainants.

*Perkins, Higgins & McCabe, James A. Higgins,* for respondent.

*James E. Flannery, Leonard B. Boudin,* of New York Bar, for intervening respondents.